FARMERS' LOAN AND TRUST COMPANY, Trustee, Respondent, v. BANKERS AND MERCHANTS' TELEGRAPH COMPANY et al., Respondents.— In the Matter of the Claim of THE THIRD NATIONAL BANK of the City of New York, Appellant.

1. INSOLVENT CORPORATION — RIGHTS OF CREDITORS — BONDHOLDERS — RECEIVERS' CERTIFICATES. The right of a creditor of an insolvent corporation in the hands of a receiver to have a preference over bondholders under a first mortgage is *strictissimi juris ;* and such a creditor will not be entitled to such preference, or to call upon holders of receivers' certificates, who have been paid part of their claim, to contribute to make him equal to them, on the ground that, although not holding such certificates,

his claim consists of a loan to the corporation of money used in paying debts of a character for which receivers' certificates were subsequently authorized to be issued, by a judgment which declared that such certificates should be a first lien on the mortgaged property.

2. INSOLVENT CORPORATION — CLAIM FOR MONEY LOANED — RIGHTS OF BONDHOLDERS. A party loaning money to an embarrassed corporation, subsequently adjudged to be insolvent, and taking security therefor, is not in a position which entitles him in equity to be adjudged to have a lien on mortgaged property of the corporation or its proceeds in preference to bondholders under a mortgage existing when the loan was made; and it is immaterial for what purpose the loan was made or how the money received thereon was applied, provided the bondholders were not parties to the transaction.

3. INVALID LIEN — VIOLATION OF INJUNCTION. One cannot be heard in a court of equity engaged in the administration of the proceeds of mortgaged property, to assert an alleged lien thereon having its origin in a violation of an injunction and judgment of the court — such as, e. g., the lien of an attachment levied by a citizen of this state upon the mortgaged property and lines, in other states, of a telegraph corporation of this state, in the possession of receivers, appointed here to operate the entire lines of the corporation, by a judgment, of which the attaching creditor had notice, which vested the whole property of the corporation in the receivers and enjoined all persons from interfering with them in the discharge of their duties.

Reported below, 83 Hun, 560.

(Argued January 20, 1896; decided January 28, 1896.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made January 18, 1895, which affirmed an order of the Special Term confirming the report of a referee and adjudging the claim of the appellant, the Third National Bank, not to be a preferred claim against the property of the Bankers and Merchants' Telegraph Company, respondent.

The Third National Bank of the city of New York in May, 1884, upon the application of the officers of the Bankers and Merchants' Telegraph Company, a New York corporation owning and operating lines of telegraph in New York, Massachusetts, Rhode Island and other states, loaned to the company $50,000 upon the statement that that amount was needed to meet current supply bills and contract obligations, taking

as collateral security $300,000 of the bonds of the company, secured by a trust mortgage for $10,000,000, dated November 24, 1883, on all its property and lines, executed to the Farmers' Loan and Trust Company as trustee.   The telegraph company was financially embarrassed at the time, but the officers represented to the bank that the amount of the proposed loan would relieve the company and enable it to go on with its business.   The company paid $10,000 of this loan and on August 4, 1884, the bank renewed the loan for thirty days, taking the company's note for $40,000, giving additional bonds to the amount of $100,000 as further security, so that the bank held bonds to the amount of $400,000, then worth in the market twenty cents on the dollar, as security for the note of $40,000.   The note went to protest and the bank subsequently sold the bonds and after applying the proceeds of the sale, there remained due to the bank December 2, 1885, the sum of $23,350.09, which has never been paid.   One Day, a judgment creditor of the company, execution on his judgment having been returned unsatisfied, commenced in the fall of 1884 an action in the Supreme Court of this state against the company, to sequestrate its property, and for the appointment of a receiver, and receivers were appointed September 24, 1884, of all its property and effects, real and personal, wheresoever situate, with power to operate and manage its lines of telegraph, and by the order appointing the receivers all persons were enjoined from interfering in any manner with the receivers in the discharge of their duties.   In October and December, 1884, the receivers in the Day suit were authorized by the court to issue receivers' certificates for money to be borrowed to carry on the business and to pay certain claims, which certificates, it was declared, would constitute a first lien on the property of the company.   Under this authority receivers' certificates were issued aggregating $195,000.   After the commencement of the Day suit an action was commenced by one De Haven, a bondholder, against the company, the receivers in the Day suit and the trustee of the mortgage, for the dissolution of the company and the appointment of a

receiver, and January 6, 1885, judgment was entered in the action, appointing the same persons who had been appointed receivers in the Day suit, receivers in the De Haven suit, and the entry of the judgment in the De Haven suit substantially superseded the prior proceedings in the Day suit. The judgment in the De Haven suit made very broad provision for the issue of receivers' certificates to take priority of the mortgage, and under its provisions and the prior order referred to, receivers' certificates were issued amounting in the aggregate to $602,802.66. The judgment in the De Haven suit contained a provision enjoining interference by any person with the receivers in the discharge of their duties, similar to the provision in the order in the Day suit.

On the 23d of April, 1885, the Farmers' Loan and Trust Company, the trustee under the mortgage, commenced an action for the foreclosure of the mortgage, and May 1, 1885, receivers were appointed therein as successors to the receivers appointed in the Day and De Haven suits. June 5, 1885, judgment of foreclosure was entered in the action, which, among other things, authorized the purchasers on the sale under the judgment to receive on the bid receivers' certificates theretofore issued in the Day and De Haven suits, and to pay over any surplus to the bondholders. The sale under the foreclosure took place August 10, 1885, and the property was bid in by or for a corporation known as the United Lines Telegraph Company, for the sum of $500,000, and, by an order of distribution made July 2, 1894, it appears that the entire proceeds of the sale, above costs and expenses, were applied on receivers' certificates, and were sufficient to pay thereon only sixty-nine per cent of their amount. The Third National Bank of the city of New York never, so far as appears, applied for or received from the receivers any certificates. On the 5th of May, 1885, long after the appointment of the receivers in the Day and De Haven suits, and the appointment of receivers in the foreclosure suit, and about six weeks after it had been served with a copy of the order in the De Haven suit appointing receivers and enjoining inter-

ference with the receivers so appointed, the bank instituted attachment suits in the states of Massachusetts and Rhode Island against the Bankers and Merchants' Telegraph Company upon their debt, and caused the attachments to be levied upon the poles and lines· and other property of the company in those states respectively. It is undisputed that the receivers, at the time of these attachments, were in possession of the property of the company in these states, and were operating the lines of telegraph therein, and had been in such possession since their appointment, and this was known to the bank when the attachments were issued. On the 11th of June, 1886, on the matter being brought to the attention of the court in this state, the bank was enjoined from the further prosecution of the attachment suits commenced in Massachusetts and Rhode Island. On July 31, 1885 (the same day on which the judgment of foreclosure was entered), the bank entered into a stipulation entitled in the foreclosure action, that, " in case the petitioner (the bank) shall establish, on a reference to be ordered herein, that it is entitled to share in the proceeds of the sale in preference to the bondholders, then the petitioner shall be paid the amount that it may be adjudged as entitled to receive out of the proceeds." March 19, 1886, the court, on motion in the foreclosure action and the actions of Day and De Haven, directed the bank to cancel and annul of record its attachments obtained in Massachusetts and Rhode Island, so that the property of the telegraph company could be sold on the foreclosure judgment free of all incumbrances created thereby, and that the liens, if any thereunder, be transferred to the proceeds, but in the order it was directed that the order was not to be taken " as an adjudication that any such lien actually existed, or that the bank is entitled to share in preference to such bondholders."

Other facts are stated in the opinion.

*Everett P. Wheeler* for appellant. The referee should have reported that the petitioner was subrogated to the rights of the parties whose debts were paid out of the money loaned

by the petitioner. (*Newbold* v. *P. & S. R. R. Co.*, 5 Bradw. 367; *In re C. & Y. R. Co.*, L. R. [4 Ch. App.] 748; *Lidderdale* v. *Robinson*, 2 Brock. 159; *Coe* v. *Malcolm*, 66 N. Y. 363; *Pease* v. *Egan*, 131 N. Y. 262; *Cottrell's Appeal*, 23 Penn. St. 294; *C. F. Ins. Co.* v. *E. R. Co.*, 10 Hun, 55; 73 N. Y. 399; *Cunliffe* v. *Blackburn*, L. R. [22 Ch. Div.] 61; *Everson* v. *McMullen*, 113 N. Y. 293; *Barnes* v. *Mott*, 64 N. Y. 397; *Green* v. *Milbank*, 3 Abb. [N. C.] 138; *Sidener* v. *Pavey*, 77 Ind. 241; Harris on Subrogation, § 13; *Lockwood* v. *Marsh*, 3 Nev. 138; *Cotton* v. *Dacey*, 61 Fed. Rep. 481; *M. L. Ins. Co.* v. *F. S., etc., R. R. Co.*, 74 Hun, 505; *Stevens* v. *King*, 84 Maine, 291; *Fowler* v. *Mans*, 40 N. E. Rep. 56; *Gans* v. *Thieme*, 93 N. Y. 225; *Draper* v. *Ashley*, 52 N. W. Rep. 707; *Stewart* v. *Stewart*, 63 N. W. Rep. 886; *Ellsworth* v. *Lockwood*, 42 N. Y. 89; *Dings* v. *Parshall*, 7 Hun, 522.) The referee should have reported that the attachments levied in Rhode Island and Massachusetts were valid liens upon the attached property, in preference to the lien created by the mortgage from the Bankers and Merchants' Telegraph Company to the Farmers' Loan and Trust Company and to the claims of the bondholders under it; that the value of the property upon which the same were levied was in the aggregate $95,000, and that the bank should be paid the amount of the judgment in its favor, entered in Rhode Island June, 1886, for $24,348.66, with interest from June 1, 1886, out of the proceeds of the sale. (*Harris* v. *Arnold*, 1 R. I. 125; *A. U. T. Co.* v. *Middleton*, 80 N. Y. 408; *Hynes* v. *McDermott*, 82 N. Y. 41; *Chapin* v. *Dobson*, 78 N. Y. 74; *Huntington* v. *Clemence*, 103 Mass. 482; *Shellington* v. *Howland*, 53 N. Y. 371, 375; Broom's Legal Maxims, 136, 700; *Root* v. *Wagner*, 30 N. Y. 9, 17; *Bernheim* v. *Daggett*, 12 Abb. [N. C.] 316; *Hardman* v. *Sage*, 124 N. Y. 25; *Ward* v. *Kilpatrick*, 85 N. Y. 413; *Morton* v. *Tucker*, 145 N. Y. 244; *Sheffield* v. *Robinson*, 73 Hun, 173; *Bates* v. *Trustees Masonic Hall*, 7 Misc. Rep. 609; *C. C. Bank* v. *Risley*, 19 N. Y. 369; *Osgood* v. *Maguire*, 61 N. Y. 524; *Booth* v. *Clark*, 17 How. [U. S.] 322; *Finck* v. *Funke*, 25

Hun, 616 ; *O' Callaghan* v. *Fraser,* 37 Hun, 484; *Brigham* v. *Ludington,* 12 Blatch. 237 ; *King* v. *Cutts,* 24 Wis. 627 ; *Alder* v. *Brick Co.,* 13 Wis. 57 ; *Buswell* v. *Sitting,* 23 Law. Rep. Ann. 846 ; *Fawcett* v. *Sitting,* 24 Law. Rep. Ann. 815 ; *Day* v. *P. T. Co.,* 66 Md. 354 ; *S. P. P. R. R. R. Co.* v. *King,* 24 Law. Rep. Ann. 730 ; *Dunlop P. F. Ins. Co.,* 74 N. Y. 145 ; *Moran* v. *Sturges,* 154 U. S. 256 ; *W. N. Bank* v. *Birch,* 130 N. Y. 221 ; *Gates* v. *Preston,* 41 N. Y. 113 ; *Green* v. *Van Buskirk,* 7 Wall. 139 ; *Warner* v. *Jaffray,* 96 N. Y. 248 ; 4 Kent's Comm. 441 ; *Lynes* v. *Townsend,* 33 N. Y. 558 ; 4 R. S. [8th ed.] 2508 ; *Siedenbach* v. *Riley,* 111 N. Y. 560.) The allegation that when the note matured the bonds taken as collateral to the loan were more than sufficient to secure it is no answer to the petition. ( *Wells* v. *Mann,* 45 N. Y. 327.)

*William W. Cook* for respondents. A general creditor cannot claim priority over the bondholders, or a parity with receivers' certificate holders, even though that general creditor loaned the money to the company in order to keep it a " going concern." (*M., etc., Co.* v. *T., etc., R. Co.,* 137 U. S. 171 ; *Penn* v. *Calhoun,* 121 U. S. 251 ; *In re Kelly,* 5 Fed. Rep. 846 ; *In re R. C. I. Co.,* L. R. [3 Ch. Div.] 411.) As a matter of fact the attachments in Massachusetts and Rhode Island were waived under the stipulation and were dissolved under the prohibitive order of the court. As a matter of law, even if they had not been waived or dissolved, they were illegal and in contempt of court. (*Chaffee* v. *Q. Co.,* 13 R. I. 442 ; *V., etc., R. R. Co.* v. *V. C. R. R. Co.,* 46 Vt. 792 ; *Sercomb* v. *Catlin,* 128 Ill. 556 ; *Denon* v. *Foster,* 86 Mass. 545 ; *Moore* v. *Potter,* 87 Hun, 336 ; *Woerishoffer* v. *N. R. C. Co.,* 99 N. Y. 398.)

ANDREWS, Ch. J. It is claimed in behalf of the Third National Bank that the money loaned to the Bankers and Merchants' Telegraph Company created a debt which, in

41

equity, was entitled to rank as a charge on the proceeds of the foreclosure sale prior to the claim of the bondholders. It is undisputed that the mortgage to secure the bonds was executed November 23, 1883, and that the loan by the bank was not made until the following May. By the general rule the bondholders who relied upon the mortgage as security for their debts, which was a specific charge upon the property of the Bankers and Merchants' Telegraph Company, are entitled to preference in the distribution of the proceeds. The claims of general creditors of a mortgagor are in general postponed to the mortgage, even when their debts were contracted prior to its execution. The bank seeks to raise an equity to preference in the case, although its debt was subsequent to the mortgage, by invoking the doctrine upon which courts of equity have acted in the administration of the assets of insolvent corporations, that expenses incurred by receivers in the management and preservation of the property which is the subject of the receivership may, by order of the court, be made a primary charge and displace the priority of lien which, in ordinary cases, attaches to a mortgage security existing at the time of the insolvency. The courts have assumed to go still further, and to adjudge priority of payment of debts contracted by a failing corporation within a few months prior to its adjudged insolvency for labor, supplies and necessary current expenses incurred in the struggle to keep itself alive. There is a sound equity which supports the doctrine that when the nature of the property is such that the business to which it has been devoted cannot be discontinued without great probable loss, the court may authorize it to be continued by its officer and receiver, pending the closing up of the affairs of the insolvent corporation. Expenses incurred by a receiver under such circumstances may be justly said to be expenses of preservation for the benefit of bondholders or other persons entitled to share in the final distribution, which ought to be first paid. But it is obvious that with the best intentions attempts by the court to carry on the business of a railroad or of a telegraph company through its receiver are hazardous, and we think

courts may well pause before extending the application of the principle to which we have adverted.

The petitioner in this case is a banking institution, and it loaned its money upon what at the time was ample security, and as is to be inferred, in the ordinary course of banking business. It had record notice of the mortgage by the records in this state. Its security as it has turned out was inadequate, but by the payment made on the loan and sale of the bonds taken as security it has realized on its debt nearly as large a percentage as any of the unsecured creditors of the company whose debts were outstanding at the time of the appointment of the receiver who received receivers' certificates. The latter received only sixty-nine per cent of their claims. The bondholders and general creditors received nothing. The bank neither applied for nor received receivers' certificates. But the claim is that when it made the loan the Bankers and Merchants' Telegraph Company was in pressing need of money to meet its current expenses, and that it was used by the company in paying debts of a character for which receivers' certificates were authorized to be issued by the judgment in the De Haven suit of January 6, 1885. It is also suggested that it was deceived by the assurances of the officers of the company when the loan was made. There is no foundation for the charge of fraud, and moreover if any fraud was committed by the company in securing the loan, the bondholders received no benefit and their rights are not affected. The bank is not in the position of a certificate holder, and only the holders of receivers' certificates were under the judgment in the De Haven suit entitled to a preference over the bondholders. The right of a creditor of an insolvent corporation in the hands of a receiver to have a preference over bondholders under a first mortgage is *strictissimi juris.*

Assuming that the bank is entitled to be subrogated to the claims of the persons paid out of the loan, such claims are not entitled to preference out of the proceeds over the claims of the bondholders, because they were not represented by receivers' certificates, and it was only claims so represented

which, under the judgment in the De Haven suit, were enti-
tled to preference. The bank has no equity to call upon
those who held receivers' certificates, and were paid a part of
their claims, to contribute to make the bank equal with them.
They secured the proper evidence of their right to participate
in the distribution, and the bank neglected to do so. The
bank is entitled to no dispensation to give it a standing which
it has not acquired. But we think the claim of the bank may
properly be denied on the broad ground that a party loaning
money to an embarrassed corporation, subsequently adjudged
to be insolvent, and taking security therefor, is not in a position
which entitles him in equity to be adjudged to have a lien on
mortgaged property of the corporation or its proceeds in
preference to bondholders under a mortgage existing when
the loan was made, and that it is immaterial for what purpose
the loan was made, or how the money received thereon was
applied, provided the bondholders were not parties to the
transaction. The recent cases, we think, support this view.
(*Penn* v. *Calhoun*, 121 U. S. 251; *Morgan's Co.* v. *Texas
Central Railway Co.*, 137 id. 171; *Cole* v. *Cunningham*,
133 id. 107; *In re R. C. I. Co.* (L. R. [3 Ch. Div.] 411.)

The bank presents another and different claim upon which
it bases its right to priority of payment out of the fund. It
asserts that it acquired a legal lien on the property and lines
of the Bankers and Merchants' Telegraph Company in the
states of Massachusetts and Rhode Island by the levy
of its attachments in those states May 5, 1885, and it
claims that these attachments were prior to the mortgage
to the Farmers' Loan and Trust Company, by reason of the
fact that it was not recorded in either of those states
at the time of the levy of the attachments. The further
claim is made that under the statutes and decisions in Massa-
chusetts and Rhode Island, attachments levied before the
record of a mortgage acquire priority. We are of opinion
that the bank can take nothing by its attachments. When
they were issued the property levied upon was in the possession
of the receivers in the De Haven suit, who were then engaged

in operating the entire lines of the company, including the lines in Massachusetts and Rhode Island, and this was known to the bank when it caused its attachments to be issued. The issuing of the attachments was a contempt of the process of the court. The judgment in the De Haven suit, entered January 6, 1885, by its terms vested the whole property of the company, wheresoever situate, in the receivers appointed thereby, and enjoined all persons from interfering with them in the discharge of their duties. It moreover provided for the issuing of receivers' certificates as a first lien on all the property of the company. The bank when it caused the attachments to be levied had full notice of the judgment, having six weeks prior to that time been served with a copy. The bank was a citizen of this state and amenable to the jurisdiction of its courts. The act of the bank was a clear violation of the injunction, and tended moreover to thwart the scheme formuluted in the judgment in respect to receivers' certificates. We are of opinion that the bank cannot be heard in a court of equity engaged in the administration of the proceeds of the mortgaged property to assert an alleged lien having its origin in a violation of the injunction and judgment of the court. It is not material to consider whether under the laws of Massachusetts and Rhode Island the attachments created a lien prior to the mortgage. The bank was bound to submit to the injunction, and an attachment which might ripen into a judgment upon which the sale of the property levied upon could be made, was an interference with the receivership, contrary to the spirit and intent of the judgment of January 6, 1885.

Upon the whole case we think the bank failed to show any right to relief, and the orders appealed from should be affirmed.

All concur.

Orders affirmed.