GUARANTEE TRUST & SAFE–DEPOSIT CO. v. PHILADELPHIA, R. & N. E. R. CO.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. RAILROADS—MORTGAGE FORECLOSURE—PAYMENT OF CURRENT EXPENSES.
   Where a plaintiff in an action to foreclose a railroad mortgage applies for and obtains an order permitting the receiver to pay indebtedness of the defendant, incurred for current expenses of operation during a period preceding his appointment, he thereby assents to the payment of such debts out of the property in court as in equity should be so paid; but, while the order is permissive, it neither leaves it to the receiver to capriciously refuse payment in a proper case nor to pay in an improper case.

2. SAME.
   Upon an application for payment of such a claim the court may look behind its form to its substance, to see if equity really requires its payment, and, if it appears that the payment would in reality accrue to the benefit of parties who are themselves obligated to pay the debt in question, the application should be denied, for they have no equities as against the defendant's bondholders.

Appeal from special term, Dutchess county.

Action by the Guarantee Trust & Safe-Deposit Company, trustee, against the Philadelphia, Reading & New England Railroad Company, to foreclose a mortgage. Application by petitioners, as receivers of the Philadelphia & Reading Coal & Iron Company, to direct the receiver, James K. O. Sherwood, to pay for certain coal delivered. From an order directing the receiver not to pay the claim, all the parties appeal. Order affirmed on appeal of petitioners. Order directing receiver to pay referee's fees reversed, and appeals of plaintiff and defendant dismissed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William W. Jenks, for plaintiff.

James Armstrong, for receiver James K. O. Sherwood.

Joseph H. Choate, for other receivers.

Milton A. Fowler, for defendant Philadelphia, R. & N. E. R. Co.

CULLEN, J. This was an application by the petitioners, as receivers of the Philadelphia & Reading Coal & Iron Company, to direct James K. O. Sherwood, receiver, in an action to foreclose a mortgage on the road of the Philadelphia, Reading & New England Railroad Company, to pay them for coal sold and delivered to the last-named company during the three months preceding Sherwood's appointment. The order appointing the receiver in the foreclosure suit contains the following clause: "Out of the moneys and income coming into his hands from the said property, the receiver may pay all taxes, * * * and he may also pay indebtedness of the said defendant heretofore incurred for current expenses of operation during the three months next preceding the date of this order." Upon Sherwood's appointment as receiver the company turned over to him $27,187.90 in cash. The application was referred to a referee to take proof, and report his opinion thereon. The referee reported

that the claim was established, and should be paid. The special term upheld the claim against the company, but decided that it was not entitled to payment from the receiver. The court directed the receiver to pay the expenses of the reference. From the order entered on this decision all parties have appealed.

I cannot find a reported case in the courts of this state where the receiver of a railroad company has been directed to pay any unsecured debts, of whatever character, incurred prior to his appointment as receiver. Debts incurred by a receiver, of course, stand on an entirely different footing. In Farmers' Loan & Trust Co. v. Bankers' & Merchants' Tel. Co., 148 N. Y. 315, 42 N. E. 707,—the last case upon the subject,—the most the court says on the question is: "The courts have assumed to go still further, and to adjudge priority of payment of debts contracted by a failing corporation within a few months prior to its adjudged insolvency for labor, supplies, and necessary current expenses incurred in the struggle to keep itself alive." The last is the rule in the courts of the United States (Fosdick v. Schall, 99 U. S. 235; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140; Union Trust Co. v. Illinois M. Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809), and it may be that what we have quoted from the opinion of the court of appeals is an intimation that that court will finally adopt the same rule. However, it is plainly equitable and necessary that railroad employés shall be paid in preference to other claims, or otherwise people would be foolish to work at all on some railroads, and on others, in justice to themselves, would be compelled to abandon work on the first default in the payment of wages; for the normal condition of many railroads (notably that of the defendant and its predecessors, and also that of the company operating it, and guarantying its bonds, the Philadelphia & Reading Railroad Company) is that of chronic insolvency. Thus the public service would suffer. This applies almost equally to material used in operation of a railroad. The order appointing a receiver in this case, granted on the plaintiff's motion, recognized the equity of such claims, and authorized the receiver to pay indebtedness for current expenses of operation incurred in the prior three months. We think that the plaintiff, by applying for and obtaining this order, has assented to the payment of such debts out of the property in court as in equity should be so paid. The order is permissive, but this neither leaves it to the receiver to capriciously refuse payment in a proper case nor to pay in an improper case.

The courts have given certain unsecured claims a preference over the bondholders on two general grounds: First, that income which should have been appropriated to the current operating expenses has been diverted to the bondholders, or to the improvement of the corpus of the mortgaged estate; second, that for the purpose of continuing the operation of the railroad the company should have credit for its operating expenses,—a credit which could not be maintained were it to be subjected to the hazard of the general financial condition of the company. The claim of the petitioners cannot be sustained on the first ground, for it does not appear that any income accruing before the receivership was applied to other than operating expenses.

Some $27,000 was turned over to the receiver upon his appointment, but the amount of the debts for current expenses outstanding at the time does not appear in the record before us. The claim, however, would be upheld on the second ground, were it not for the relations between the claimants and the defendant company, which, it is urged, deprive the claimants of equitable superiority over the bondholders. The defendant was organized in July, 1892, by a consolidation of certain railroad companies. On August 1, 1892, it entered into a very voluminous and somewhat complicated agreement with the Philadelphia & Reading Railroad Company. The agreement recites that the Philadelphia & Reading Railroad Company owned and controlled corporations engaged in the mining and production of coal, and also railroads connecting with that of the defendant company; that it was desirous of further extending its lines for the transportation of coal, and for other freight and passenger traffic; that in April, 1892, it had entered into an agreement with the stockholders of certain of the companies merged into the defendant company, and with the committee of the security holders of the other companies, whereby it obtained a majority of the capital stock of those companies, and in consideration therefor assured certain payments. For the purpose of carrying out those agreements, the Philadelphia & Reading Railroad Company covenanted to pay the first mortgage bonds which it had guarantied, and to pay to the defendant company any deficiency which might exist in its income on the payment of interest, taxes, rentals, and operating expenses. It further agreed that the management and operation of the defendant company should be such as to most inure to its benefit, and that the Philadelphia & Reading Railroad Company would use its controlling interest in the stock to accomplish that end. This agreement for the operation of the defendant's railroad was peculiar, and necessarily so. In addition to the first mortgage bonds guarantied by the Philadelphia & Reading Railroad Company, there were several series of income bonds not guarantied, the interest on which was payable out of the net earnings of the defendant's road. It was, therefore, necessary that the accounts of the operation of the defendant company should be kept separate, and for this reason the Philadelphia & Reading Railroad Company was to operate that company's road, not through a lease, but through the ownership of a majority of the stock. The latter company therefore agreed not to pay the debts of the defendant company, but to pay the defendant enough so that it might pay its own debts. Under this agreement the Philadelphia & Reading Railroad Company took control of the defendant's railroad, and operated it physically as a division of the former company's railroad, though the accounts were kept separate. The Philadelphia & Reading Coal & Iron Company was one of the mining corporations referred to in the agreement as owned and controlled by the Philadelphia & Reading Railroad Company. The railroad company not only owned the whole stock of the coal company, but was its creditor to the extent of over $35,000,000. In February, 1893, the petitioners were appointed receivers of the railroad company, and also of the coal and iron company. The operation of defendant's railroad was continued in the

same manner as before.   On July 13th the petitioners, as receivers of the railroad company, appointed a manager of the defendant's railroad under the title of superintendent of the New England division of the Philadelphia & Reading Railroad Company.   At the time of the appointment of the receiver in the foreclosure suit, the defendant's road was in the absolute control of the petitioners, as receivers of the Philadelphia & Reading Railroad Company.   If the coal had been furnished by the Philadelphia & Reading Railroad Company, no one would urge the validity of its claim, for the company had contracted to pay any deficiency in the operating expenses of the defendant's road.   But it is contended that the receivers of the railroad company were not bound by the contract of the company.   This is doubtless true.   The receivers might adopt or repudiate the contract, as they deemed advantageous.   United States Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86;  Woodruff v. Railway Co., 93 N. Y. 609.   But, if the receivers adopted it, they were bound by its obligations.   The evidence of the action of the receivers is very meager, but, such as it is,—the letter of appointment already referred to,—it tends to show an adoption of the contract.   There is no evidence whatever to show that they disclaimed it.   It may be that the receivers found it advantageous to their two estates to continue the contract in force, at least so long as they could avoid payment of the interest on the bonds of the defendant railroad.   It is true that the Philadelphia & Reading Coal Company and the Philadelphia & Reading Railroad Company are in law entirely different corporations, and that the contracts of the one create no obligation on the part of the other.   But it is equally true that the defendant and its bondholders are entirely distinct parties, and that for no debt of the company are either the bondholders or their property liable at law.   If the plaintiff had not asked for a receiver, the petitioners could not have had a penny from the property, even under the rule of the United States courts.   "The right of a creditor of an insolvent corporation in the hands of a receiver to have a preference over bondholders under a first mortgage is strictissimi juris."   Farmers' Loan & Trust Co. v. Bankers' & Merchants' Tel. Co., supra.   It would be singular that in the case of a claim of the character of that before us,—a claim solely the creation of equity, and a very recent one,—we could not look behind the form of the claim to its substance, to see if equity really requires its payment.   It does not appear that the coal company has any other creditor than the railroad company.   The money collected on this claim will thus ultimately go to the bondholders of the railroad company.   As already stated, the receivers of that company, who represent its bondholders, did not repudiate, but adopted, the company's contract, whereby they became bound by its obligation, and should have paid the claim now presented.   The Philadelphia & Reading Railroad Company also, by that contract, agreed to pay the bonds and the coupons thereon, which are the subject of this foreclosure.   We therefore think that the equities of the bondholders are superior to those of the petitioners, and that the payment of the petitioners' claim was properly denied.

The receiver appeals from so much of the order of the special term

as directs him to pay the fees and disbursements of the referee.    As
the petitioners failed in their application, they should bear these ex-
penses, and so much of the order as directs the receiver to reimburse
them was erroneous, and should be reversed.    The plaintiff appeals
from the foregoing provision, and also so much of the order of the
special term as declares that the defendant is indebted to the peti-
tioners for coal sold and delivered.    We cannot see that the plaintiff
has any interest in this question.    What boots it to the plaintiff
what the defendant's debts are, so long as neither the plaintiff nor its
receiver is compelled to pay them?    This appeal should be dis-
missed.    The defendant company appeals from the provision of the
order of the special term last recited.    We do not regard this portion
of the order appealed from as an adjudication against the defendant
that would bind it in any proceedings taken for the collection of this
claim.    It is merely the equivalent of a finding of fact by the court
in a proceeding against the receiver.    This appeal should also be dis-
missed.

On appeal of the petitioners, order of the special term affirmed,
with $10 costs and disbursements to the receiver.    On appeal of the
receiver, order directing him to pay referee's fees reversed.    Appeals
of the plaintiff and defendant dismissed.    All concur.