## ANDREWS INSTITUTE FOR GIRLS v. NEW YORK STEAM CO. et al. (INDEPENDENT ORDER OF FORESTERS, Intervener).

(Circuit Court of Appeals, Second Circuit.· June 2, 1920.)

No. 244.

1. **Pleading ☞34(5)—Allegation that breach of trust was "procured" not equivalent to allegation it was knowingly induced.**

An allegation in a complaint in intervention that the officers of the mortgagee, suing to foreclose the mortgage, procured a breach of trust by intervener's officers, is not an allegation that the breach of trust was knowingly induced, which is a fraud, since "procured," though having well-known meaning in criminal law, has only a vague and indefinite meaning in civil law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Procure.]

2. **Insurance ☞695—Investment of funds by president of fraternal society in insufficiently secured bonds not breach of trust.**

Though the statutes require the investment of the funds of a fraternal benefit society in bonds reasonably worth the price paid therefor and secured by mortgage, the mere fact that such funds were invested by the president in bonds of an embarrassed corporation, which were insufficiently secured, does not establish a breach of trust.

---

**3. Corporations ⟺480—Lender to embarrassed corporation not entitled to priority over existing mortgages.**

One who loans money to a financially embarrassed corporation, to enable it to continue in business, and takes security therefor, is not thereby entitled to priority over mortgages existing when the loans were made.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Andrews Institute for Girls against the New York Steam Company and others, in which the Independent Order of Foresters intervened, claiming a lien prior to the mortgages which complainant sought to foreclose. From a decree granting complainant's motion to dismiss the intervention, after answer, the intervener appeals. Affirmed.

Plaintiff, hereinafter called the Institute, brought suit to foreclose several mortgages upon as many parcels of real estate situate within that district. Jurisdiction depended upon diversity of citizenship; the Institute being a corporation of Ohio and the defendant mortgagor (the Steam Company) a corporation of New York. The Central Union Trust Company of New York was made defendant as the trustee of two corporate mortgages created to secure issues of bonds. These mortgages, created in 1911 and 1916, respectively (and hereinafter called senior and junior), were both inferior in order of lien to the mortgages sought to be foreclosed by the Institute.

Several months after action begun the appellant herein (hereinafter called the Foresters) obtained leave to intervene as a party defendant. This order was obtained upon representations by affidavit that the Foresters owned $2,-062,000, par value, of the bonds issued under the junior mortgage; wherefore it was asserted that the Foresters had "an interest in this litigation, and its presence" therein was proper "to a complete determination of the cause and for the protection of its said interest." The affidavit for intervention states no reason why the bondholder intervened in an action wherein its trustee was already a party.

The amended answer of the Foresters, after certain denials now confessedly immaterial, sets up a counterclaim to the following effect, viz: The intervener is a Canadian corporation carrying on an insurance business of the kind commonly known as "fraternal" or mutual, and it had in 1914 in its corporate treasury considerable funds and property held for the benefit of its policyholders.

The answer averred that the "true intent, meaning, and effect" of the Canadian statutes on the subject are that the Foresters' fund should be invested "in such bonds only as are reasonably worth the price paid therefor, and are secured by a mortgage or hypothec upon real or other property * * * of a value substantially in excess of the total amount of bonds issued against and secured" thereby. In the year 1914 one Stevenson was president of the Foresters and had control of the investment of its funds.

At the same time the Institute was a large holder of the existing securities of the Steam Company, and as such deeply interested in its prosperity and advancement, and one of its trustees, Mr. St. John, was and continued to be the Institute's agent for (as the answer avers) "procuring of necessary funds for the" Steam Company and the "sale of the property and securities of the Steam Company owned by the Institute." St. John, together with one Hanford (who is not alleged to have had any connection with the Institute), "procured" Stevenson, as president of the Foresters, to advance to the Steam Company large sums of money, which were expended largely at any rate in the improvement and extension of its plant or apparatus, in return for which the Foresters received through Stevenson the Junior mortgage bonds hereinabove referred to.

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was also alleged that Stevenson bought from St. John personally, and paid for out of the Foresters' money, a considerable amount of Steam Company stock. It does not appear what Stevenson did with the stock, or whether the Foresters now own it. It is then averred that when Stevenson made this investment, or advanced the moneys now represented by it, i. e., in and after December, 1914, the business of the Steam Company was "unprofitable, and was resulting and had for many years resulted in substantial annual losses, and the property and resources of Steam Company available for and applicable to the payment of the advances made by Stevenson were not equivalent in value by a large sum to the aggregate of such advances," with the result that the Foresters' junior mortgage bonds were a very poor security, obtained at a time when the "unsound financial condition" of the Steam Company was well known to the Institute and to St. John.

It is finally alleged that Stevenson's application of the Foresters' funds in the manner above set forth was "in violation of the laws governing investment and expenditure of the funds of the Foresters and constituted a breach of trust of which (the Institute and St. John) had knowledge or notice and in which they participated."

For these reasons the Foresters prayed that they should be "decreed to have a lien upon the property and assets purchased with the trust funds * * * aforesaid paramount and superior to the lien" of the real estate mortgages which the Institute was seeking to foreclose in this action, and to the senior corporate mortgage of 1911.

In two other separate counterclaims the Foresters' amended answer substantially alleged fraud on the part of the Institute, in that St. John made false representations to Stevenson in regard to the earnings and profits of the Steam Company. These counterclaims, however, were formally withdrawn before hearing in the court below.

Interveners' answer being thus reduced to the allegations above summarized, the Institute moved to dismiss on the ground that the facts stated were not "sufficient to constitute a cause of action in equity."

This motion—equivalent to a demurrer under equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi)—was granted, and the Foresters then appealed.

Greene & Hurd and Bert C. Fuller, all of New York City, for appellant.

White & Case, of New York City (Joseph M. Hartfield and James A. Murphy, both of New York City, of counsel), for appellee Institute.

Larkin & Perry, of New York City (Lewis H. Freedman, of New York City, of counsel), for appellee Central Union Trust Co.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). By considering the point decided on the motion in the court below and presented by this appeal, we are not to be understood as expressing approval of the order permitting intervention. As to the propriety of granting permission to intervene we express no opinion; the point not having been argued.

Assuming as true the allegation that Stevenson bought Steam Company stock from St. John individually, it is immaterial. Indeed, the Foresters do not pray for a lien or other relief in respect of that sum. The demand of the Foresters is contained in what is called an answer to the bill of complaint in foreclosure, and is set up by way of counterclaim, apparently under equity rule 30 (201 Fed. v, 118 C. C. A. v). Whether this is a proper, or even permissible, method of presenting

such a claim as this, is another matter, not argued, and as to which no opinion is expressed.

What the Foresters want, however, is plain enough, viz. to have their junior mortgage bonds, representing Stevenson's very ill-judged investments, promoted in lien so as to outrank all the Steam Company securities held by the Institute. To reach this result by any kind of proceeding in this suit in equity, the Foresters must show a cause of action against the Institute.

[1] Such cause of action is asserted to exist because, when Stevenson bought the junior mortgage bonds, he committed a breach of the trust imposed upon him by law as president of the Foresters, and that the Institute "procured" Stevenson to do what he did through St. John, and of such breach of trust by Stevenson St. John had knowledge. The use of the word "procured" in this connection is singular. Its meaning in criminal law is well known and can be accurately stated; but in a bill in equity it cannot be stretched to mean "knowingly induced." Indeed, its use on the civil side may be called a solecism and its meaning vague. To knowingly induce a trustee to violate his trust for the pecuniary advantage of the inducer is an obvious fraud, and would be within the decision in Fyler v. Fyler, 3 Beav. 550. But no such cause of action is here well pleaded.

[2] Perhaps a more fundamental objection to the claim attempted to be set forth is that there are no allegations of fact showing that Stevenson was in any legal or accurate sense of the word a trustee, or that in buying the junior bonds of the Steam Company he committed a breach of any trust. No such trust relation can be spelled out of the statutes to which we are referred, and while in a certain sense any corporate officer who improvidently invests the corporate funds is violating his trust, that popular locution is much too vague to warrant any such relief as was approved in theory, but denied in fact, in the Fyler Case, and is here attempted.

[3] In short, this intervener is at the best in the position of one loaning money to an embarrassed corporation and taking security therefor, who deems himself in equity entitled to a lien for his loan superior to that of mortgages existing when he loaned. That no such equity exists was adjudged in Farmers' Loan, etc., Co. v. Bankers' etc., Co., 148 N. Y. 315, 42 N. E. 707, 31 L. R. A. 403, 51 Am. St. Rep. 690, and cases cited.

No cause of action being shown entitling the Foresters to a lien other than the lien of the bonds which they have, the order below was right; and it is affirmed, with costs.